Number 21-2899, United Statesexrel Ascolesevs Shoemaker Construction Company et al., Mr. McComb and Ms. Vaccaro. Welcome. Good morning. May it please the Court, David McComb for the appellant. I request about five minutes for rebuttal. You certainly may. I request that the Court, in its denial of leave, to amend to assert a proposed Second Amendment complaint on the grounds of futility. We believe the Court misapplied the standards. Retaliation claims under the... We can understand why the Court misapplied the standard, unfortunately, because it was cited in a 2017 case of our Court. We dug into that a bit, and it looks like it really wasn't brought to the fore for that Court's consideration. Did you look at the case? I did, and I fully agree, Your Honor. I think what happened in that case was that if you go back and look at Judge Wolfson's unpublished decision, she drops a footnote saying, I realize the statute was amended, but number one, the parties briefed it under the prior standard, and two, I can't tell the difference between the old standard and the amended 2009 standard. I think there is a difference. Actually, I think there's probably a significant difference. I believe there is, and maybe in the context of that case. It's a truism, but certainly context matters, and I think what happened is that that language, which maybe isn't as precise, and none of the judges here are on that panel. It's certainly a distinguished panel, but the language was probably not as crisp as it could have been. It was a true statement in the context of that case. So is your issue that the district court misapplied the standard or should have allowed you to amend? Do you think that the second amendment complaint was adequately pled? Well, it was. The problem was what was required, and the first decision saying, you haven't done it, but I'm going to grant. I'm dismissing your claims without prejudice to replete, if you can. So I think you do that Tenth Circuit opinion, right? Yeah, I think he didn't apply the Tenth Circuit. The Tenth Circuit decision to read was a quality assurance person can assert a false claims act retaliation claim. You have to show you're going beyond your job. You're putting them on notice, really, that you're going to pursue a false claims litigation, right? Yes and no. I think specifically to read what does a QA person have to allege and prove, something beyond your job of saying this isn't compliant with the contract standards. One of the things the amendment did was you put them on notice that there are violations, not necessarily that there has to be upcoming litigation, isn't that correct? Right, yes, I agree. And I think it has to be tied to the false claims act. All retaliation claims have some basic similarities, which is you engage in protected conduct, you suffer an adverse personnel action, and there's causation between the termination and your activity. So then how do you square that with the Petras decision, our presidential opinion where Petras was also required to show that Simperell defendants were also on notice of the distinct possibility of false claims act litigation and retaliated against them because of the protected conduct. Did you go far enough in that Second Amendment complaint? Yes, I think under the one more efforts to stop violations, which is the trial court, Judge Goldberg, said it was amended, but he never applied it. He was always in the mode that you have to put them on notice of a claim against them. In fact, the language right before his dismissal was, hears and read, later has failed to plead specific facts when viewed in his favor to make clear that NBP was on notice, that he was attempting to stop NBP from violating the SCA and not merely doing his job. Well, the amended complaint did have substantive and retaliation claims against both the appellee and Shoemaker. The claims against Shoemaker were resolved. They were settled. But in dismissing the retaliation claims against Shoemaker, Judge Goldberg wrote that he looked at the O'Hara case and said that you can only have a retaliation claim against your employer. I'm looking at 36 of the appendix. The Judge Goldberg talks about none of the multiple e-mail communications that Aeschylus quotes in the proposed Second Amendment complaint plausibly demonstrate that he principally framed his concerns about the construction deficiencies as concerns about illegal conduct or government fraud that would have caused MPB to reasonably fear that Aeschylus was contemplating filing FCA litigation. That's the old standard. Or, he then adds, reporting to the government that MPB had committed fraud. That would seem to be actually taking the new standard into account. With all due respect, I would suggest that speculation as to what it was that the court was looking at and concluding. You may be right. If you look at the legislative history, to the extent the court finds that instructive, if you look at it, it's set out in footnote 6 of our principal brief. It's sort of the ways you can stop the new language, what that's intended to encompass, and that includes making complaints. Whistleblowers can threaten to call Channel 6 or write a letter to Congress, or they can refuse to participate. The new section can encompass a wide range of covered behavior that is encompassed by the statute. A fair reading of the proposed second amendment complaint, as well as all the complaints, is that yes, there are claims against the appellee for fraud. Probably doesn't have all the elements in terms of the reimbursement and so forth, but a fair reading of it is he's complaining about what Shoemaker is doing. He said that Shoemaker engaged in improper backfilling. There was lacking rebar in the concrete. Again, isn't that within the purview of his job? Yeah, but as the court concluded in his first opinion, he has two opinions, April and June. His first one is that it was not within the purview of his job to report wrongdoing to PHA. And the heart of the matter was that it was when he went to PHA and said, they're not complying with the contract, and this is a huge problem, that I believe that's when it got serious for him. He was told, if you have any concerns, keep them to yourself and don't speak to PHA. That's set out in the proposed amendment. Are you asking us to find the current complaint adequate, or are you asking us to remand this as an opportunity to amend your complaint? I think the proper thing is for an opportunity to re-plead in accordance with the appropriate standard as enunciated by this court, because what we were re-pleading was attempting to meet the standard Judge Goldberg had, which I don't believe was the correct standard. I think cases from other courts, the Eighth Circuit in Townsend v. Baird, the Fourth Circuit in O'Hare, the Western District case in Sessler, all talk about the fraud doesn't have to be by the employer. It can be by a third party. And it makes perfect sense. There's nothing in the language that says the fraud has to be by the employer. The problem is, again, getting back to context matters, most cases, the overwhelming majority involve whistleblowing against your employer. So there's language in numerous cases that talk about fraud by the employer. You have to put your employer on notice, which I think Judge Goldberg sees upon, and not unreasonably so, looking at Petras and saying, yeah, you have to put your employer on notice. But I think under the efforts to stop one or more violations, there can be efforts to stop other violations by other. Again, it's within the context of you have to show a causal connection. I think it has to have, it can't be completely unfettered. It has to relate to a False Claims Act violation. But that was present here. And significantly, Judge Goldberg found that we had pleaded under 9B, with sufficient particularity, a substantive False Claims Act case against Shoemaker. So having done that, it wasn't a fanciful or unrelated issue. It was right on point. But again, I just, you know, I think it's unfortunate that, I think what's unfortunate is there are probably a number of False Claims Act whistleblower cases that were dismissed for failure to show in furtherance of litigation, or showing the distinct possibility of litigation, which was the gloss put on it by the courts. When in fact, it may have been an effort to stop it by the conduct contemplated by the new language. You know, not participating, complaining strenuously to your employer, or going outside the chain of command, which was the case in Reed, going to the customer. Certainly, as I said, Judge Goldberg found that reporting wrongdoing to BHA certainly was not part of his job responsibilities. But then there was a bit of a change of heart between April and June. By June, he concluded, I think from looking at Petras, and probably concluding there are so many district court decisions saying, you know, we look at Petras, and Petras says you have to show the distinct possibility of litigation. And I think that's where he went astray. But in terms of the ultimate relief, yeah, a remand with leave to refile to meet the standard. I believe this court, and again, I'm not assigning homework to anybody, but I think that the courts would benefit from guidance as to what the new language means and how it ties together. And again, I think, you know, courts understandably don't want to open up everything to a retaliation claim. It has to be tethered. It has to be tied to, you know, a false claim of violation. So not everybody says I was fired because I was complaining about wrongdoing. It really has to relate substantively to a false claims act violation, but not in the manner that Judge Goldberg found here. May it please the court. My name is Eileen Monahan Ficarro. I'm from the law firm of Kauffman, Dolowich, and Malik, and I represent the appellee in this case, McDonough, Bolliard, Peck, or MVP. Part of the problem in this case, it appears, is that it was caused by us inadvertently not getting briefing on the 2000 or not getting significant briefing on the 2009 amendments and just assuming that the pre-2009 amendments were in play. If, I mean, you've got, by counting up seven circuits that have looked at this issue, four explicitly say the amendments are clearly guide, and others just state that the reporting violations, which in effect is what the amendments talk about rather than just litigation, they don't even cite to the amendment, it's just understood. So you've got seven to zero and you've got the third circuit saying inadvertently that it's pre-2009. The law is, we can't change the law. Understood, Your Honor, and I'm not asking you to change the law here. I also don't think that the third circuit created a problem for us when it decided Petras and acknowledged that the standard was notice of the distinct possibility of FCA litigation, even keeping in mind the amendments to the False Claims Act. Well, this guy certainly reported a lot of violations. This gentleman did. This gentleman certainly reported a lot of deficiencies that he saw with regard to the project, which is what he was tasked to do with regard to this project. I mean, the problem is, you know, it's a very sensitive issue in Philly. I can't remember what year it was, but there was a, you know, a very significant collapse of a building. And in hindsight, it was because it just wasn't constructed properly and people died. And so I can see why somebody who comes in, whose job is to be quality control, he's doing his job and then he's told, stay away from it, get out of here. And then he goes outside the chain of command, supposedly. And, I mean, he's between a rock and a hard place. What else is he supposed to do? Your Honor, we don't disagree with you that this is a very serious issue, and neither would MBP. In fact, that was MBP's job. They contracted on this project for the sole purpose of providing the types of services to prevent against the types of situations that Your Honor has mentioned. And this gentleman, the relator in this case, was the quality assurance, quality control manager, meaning that it was his job to look at this project and to let people know if it didn't comply in any way, so that there wouldn't be situations like those that Your Honor mentioned. But there's another question here, an issue, which is then when you have someone like Mr. Askleys, the relator in this case, whose job it was to do those things. Under the False Claims Act, then, what level of notice is required to notify and alert MBP that this gentleman may be either taking actions in furtherance of an FCA claim or engaging in efforts to stop this? He was told to put his feet up on the desk and do nothing. And so it looks like, at the very least, it's a material issue of fact as to whether he went outside the chain of command. Your Honor, here it's not a question of fact at all as to whether he went outside the chain of command. He makes the conclusory unsupported statement in his complaint that he did in the proposed second amended complaint that he went outside the chain of command, and he cites no facts to support that. In fact, there are allegations in the proposed second amended complaint that contradict that provision. For example, at one point, he alleges in the proposed second amended complaint that individuals from PHA sent an email out about what they saw as potential problems with the project, copying him. There is nothing in either the first amended complaint or in relator's third attempt to try to state a claim to suggest that he was reporting outside the chain of command. Here, among other things, he also indicated that these deficiencies, construction deficiencies that he was reporting pertaining to the project, were posted on project submittal exchange. There are no allegations in here that PHA, as the person whose project it was, didn't have access to that project submittal exchange. So plaintiff here, the relator, makes the conclusory statement that he was reporting outside the chain of command, and his own proposed second amended complaint and the allegations set forth therein contradict that. What would he have to have pled to satisfy your standard? What would he, Your Honor, I'm sorry, would you repeat that?  Your Honor, he should have pled something to suggest that he was doing anything other than his job with regard to this project. And he is very factually detailed in both the first amended complaint and the proposed second amended complaint about the fact that he was tasked with noting construction deficiencies, that he took steps to note those construction deficiencies, that MVP's job was to make sure that if there were any construction deficiencies with regard to the project, that this is what they were pointing out. Was he not exactly what was happening? That he was reporting construction deficiencies? Yes. So he was doing his job. That's our argument. His job was to email supervisors at MPB and Shoemaker. That's his job. But when he did that, they told him to keep his concerns to himself and not relate them to PHA. Not relate them. So in effect, we're telling you what the guardrails are, and he went across those guardrails. And so that sounds to me like by definition that's outside of chain of command. They circumscribed what he could do. Your Honor, that does not necessarily constitute describing going outside of your chain of command to report this. He, and in other places in the complaint, indicates that he was copied on emails from PHA regarding construction deficiencies with regard to the project. He, in other places in the first amended complaint and the proposed second amended complaint, indicate that he was reporting these things to MVP, to Shoemaker, and to PHA. So looking at both of these complaints, the second attempt he's tried to state a claim, and then the proposed third time he tried to state a claim, he does not offer any facts that suggest that he was reporting outside the chain of command. Because of that, then, Your Honor, this is not a question of fact. Your Honor, that question I don't know. What about the allegation that he was told, I think this is paragraph 44, that he should just, as Judge Amber alluded to earlier, I believe, just put your feet up on the desk and take it easy. What do we make of that plea? Your Honor, with regard to, again, looking at these complaints as a whole, this complaint is both the first amendment and the second amendment complaint are very factually detailed about the types of reports that he was making. He talks about emails that he was sending to individuals, and the language that he uses in no way suggests that he might be making a false CLA action or even taking other efforts to the extent that this Court sees that as different than to try to stop violations of the False Claims Act. These are the types of complaints that he makes and the types of deficiencies, construction deficiencies that he reports are all consistent with those that you would see in terms of talking about a construction project, not necessarily those that would give rise to a False Claims Act or give MVP, more importantly, notice that he might be considering or trying to stop FCA violations. For example, he specifically talks about an October 20, 2017 email where he talks about the intent of the contractors to move rapidly through any phase of the work they are expected to do and concludes that email by saying, the lack of curing on the concrete could be the beginning of a large deficiency list. That doesn't give any signal to MVP that he might be taking actions that could constitute protected conduct under the anti-retaliation provision of the False Claims Act. Your point is that he was wrongfully fired for bringing out all these deficiencies? Your Honor, we're not taking the position that he was wrongfully fired at all. That's for down the line, should this case get down the line, but our position now is not that he was wrongfully fired, but he was terminated here. He claims that it's because he made these reports that MVP's position is it was his job to do. Isn't it in the record that MVP said that, quote, Shoemaker wants you off the job, close quote? He alleges in this case that MVP said that Shoemaker wanted him off the job. But, Your Honor, that's a very vague statement. And there could have been many other things at play here that could have called for Shoemaker to want him off the job. That has nothing to do at all with the False Claims Act. And so that's a very vague statement to suggest then that MVP was somehow on notice, that he was trying to take or engage in any conduct that would be considered protected conduct under the False Claims Act. If we've got the wrong statute, if you will, if we're not really considering the amendments and they should be considered, doesn't that in and of itself call for a remand? Your Honor, no, a remand is not appropriate here. First, very briefly, the amendments to the False Claims Act that are issued here are not inconsistent with this court's standard that someone needs to put an employer on notice of the distinct possibility of FCA litigation. Your Honor is pointing to this language in the False Claims Act that now reads that retaliatory actions cannot be taken against employees who are engaged in furtherance of an FCA, a violation of the False Claims Act, or other efforts to stop one or more violations of the False Claims Act. The amendment is not inconsistent with the standard that this court has been applying, which is likely why in Petras this court didn't acknowledge the amendment and continued to apply the standard. Here, if someone was taking other efforts to stop one or more violations of the False Claims Act, does that not, too, lead to the possibility of False Claims Act litigation? Because of that, this is not inconsistent with the standard that we're applying, and Your Honor did point to multiple circuits that have addressed this issue. The First Circuit acknowledged the amendments, discussed the amendments, and indicated that those amendments were not inconsistent with the notice of the distinct possibility of FCA litigation. So, Your Honor, I don't believe that the Third Circuit created a problem for us when it decided Petras. I think that it made the right decision, even in light of the amendments to the False Claims Act that are applied here. Even though the amendment wasn't considered. We're not relitigating Petras, actually. The question is, what happened here, and we're not quite sure. It's not necessarily Judge Goldberg's fault. It was from us, and it would seem that he should be allowed to have a redo of the problem before him in light of the correct state of the law. Your Honor, he should not be allowed to have a redo. The proposed second amended complaint was the third time he attempted to state a retaliation claim against MVP under the anti-retaliation provision of the False Claims Act. Appellant's counsel commented earlier that when they were pleading this, they were trying to do it under the standard that they knew that was in place. And there's language in Judge Goldberg's opinion that indicates that he did take the amendments into consideration when he made his decision in this case. And this case does seem to fall in line with the Reed decision from the Tenth Circuit. In that case, the gentleman, the relater in that case, the female in that case, pardon me, was also a compliance employee. And in that case, the court did apply a different standard. And they acknowledged that they decided that these amendments made this broader here. And nonetheless, they said that the amendments to the False Claims Act did not disrupt the prior decisions of that court. Every case is fact, specific, correct. Your Honor, yes it is. But most of those cases, other than Reed, do not involve compliance employees. And that's particularly significant here. Employees whose job it was to report the exact types of things that they are now arguing give rise to a False Claims Act. This court, like the Tenth Circuit, in Hutchins, had pre-amendment law that indicated that compliance employees need to do a little more in order to state a retaliation claim to show that their employers had noticed that what they were doing was more than just their job. Here, regardless of what standard this court would apply, regardless of whether it determines that the amendment is not inconsistent with the notice of distinct possibility of False Claims Act litigation, or whether it also then applies perhaps an objective reasonableness standard, it doesn't matter. Neither of plaintiff's complaints, neither of relater's complaints pass muster under either standard. They do not show that the relater was doing anything more than his job when he was reporting construction deficiencies associated with the project. For that reason, as well as all the reasons set forth in our briefing, and as noted by the District Court, the District Court properly dismissed this action and didn't allow the relater to amend. And we request today respectfully that this court affirms the District Court decisions. Mr. McCone. I don't have anything further unless the panel has a question or two. The relater was doing nothing more than essentially relating deficiencies that he observed in the construction of, I guess, the building that they were working on. And that resulted in his firing. If he was only doing his job of reporting deficiencies and he was fired, that would be a violation of the statute. I think that... He went well beyond his job. He went well beyond the requirements. In fact, Judge Goldberg found that there was nothing in his job that required him to report wrongdoing to PHA. I don't mean wrongdoing, but he observed deficiencies in the construction. He wasn't fired because he was, and the complaint doesn't, none of the complaints assert that he was fired because he was knowing deficiencies. That's his job. He was fired because he kept going back to PHA and saying there's some fraudulent conduct, and it's the fraudulent conduct by Shoemaker. For example, the complaint is lengthy. It's about, it's 106 paragraphs. When you say fraudulent conduct, what exactly was the fraud that he was complaining about? For example, the concrete wasn't cured. It requires, they were behind schedule, and so by the time they laid the, they were, I'm used to dealing with the city, they were behind schedule. By the time they were laying the concrete, it was cold. It's supposed to be done when it's warm. It was cold. You can do it if you provide thermal protection. When he confronted them, they said, oh, we provided thermal protection. There was no evidence of that. We covered up, we transported tons of soil, and they pointed to a homeless person and said he dug it all out. In response to an earlier question, you said that you thought the appropriate avenue here is remand to allow a repleading. What more would you plead? Probably spell out his efforts to stop, his efforts to stop conduct by Shoemaker, and that Shoemaker said, get him off the job. We don't want him here. Would those efforts, would the plea include any references to contemplated false claims act litigation? Yes. Yeah, I think, it's not any, it could be both. It could be, you know, putting him, you know, possible false claims act litigation, or efforts to stop one more violation. So I think he was approaching it as a fraudulent thing. The problem is, Judge Goldberg said that the relator must show that his concerns are principally related to false claims act litigation, which is why the statute was amended, because it could be more. You know, how many lawyers know what false claims act claims are, and then how many engineers and accountants and nurses and scientists do? So it can be more. You can't just say the only avenue that's protected is claiming, you know, a false claims act violation. That's why it was amended, and I think, so it could be both. There's no, there's no dichotomy, it's one or the other. Clearly, he was trying to stop, and as I say, a fair reading of the complaint was, he was deeply concerned, based on, as Judge Ambrose pointed out, his knowledge of what had taken place in Florida, and I just point out that, well. It's, and rebar is required. You know, I think if we get to discovery, there will be some disturbing facts that come out, but that's neither here nor there. I guess my final point, though, is that Judge Goldberg said that, apparently presses that his concerns were not principally related to false claims act violations, and I don't think that's realistic. I think someone, a whistleblower, typically is guided by concern that the plane will fall out of the sky, or the guns won't shoot, or the vaccine is dangerous. That's the motivation. He was concerned not just that there were technical deficiencies, he was concerned that they were building a building that could fall down, and people could be injured. So whether his principal motivation was to save lives, I would suggest that was a greater concern on his part. And that the government FISC was impacted because they contracted to get X, and they got something less than X. That probably wasn't the driver. The driver was, he did not want to be the QA person and have any part in something that was just outright dangerous.